**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------- :
RICHARD KELLER                                           :
                                                         :
                              Plaintiff,                 :            Civ. No. 03-2347 (DRD)
                      v.                                 :
                                                         :
JO ANN B. BARNHART,                                      :
COMMISSIONER OF SOCIAL                                   :            **O P I N I O N**
SECURITY,                                                :
                                                         :
                              Defendant.                 :
------------------------------------------------------- :

Ernest A. Villa, Jr., Esq.
Bergen County Mental Health Law Project
327 E. Ridgewood Avenue
Suite 302
Paramus, New Jersey 07652
        Attorney for Plaintiff


Karen T. Callahan, Esq.
Special Assistant United States Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        Attorney for Defendant


**DEBEVOISE, Senior District Judge**

        Plaintiff, Richard Keller ("Plaintiff") appeals from a final determination of the

Commissioner of Social Security ("Commissioner") denying reimbursement of Supplemental

Security Income ("SSI") benefits for the months of May 1999, July 1999, December 1999,

1

January 2000, March 2000, April 2000, and June 2000.   For the reasons set forth below, the Commissioner's determination is affirmed.

### PROCEDURAL HISTORY

In May 1999, the Social Security Administration ("SSA") notified Richard Keller that his SSI benefits had been terminated because he received liquid resources in excess of the allowable limit.  Tr. 12.  In response, Plaintiff filed a Notice and Request for Reconsideration on September 15, 1999.  Tr. 28-29.  On September 9, 2000, after a partially favorable decision, Plaintiff filed a Request For Hearing.  Tr. 84-89.  On August 29, 2001 the matter was heard before the Honorable Herbert Rosenstein, Administrative Law Judge ("ALJ"), who ruled against Plaintiff.  Tr. 9-14.  Thereafter, plaintiff requested review of the ALJ's decision.  Tr. 8.  The Administration's Appeals Council denied Plaintiff's request for review.  Tr. 4-7.  Upon denial of his request, Plaintiff filed his complaint in this court in May 2002.  Pl's Br. 6.

### FACTS

Since 1986, Richard Keller, a SSI recipient, had lived in his mother's home in Teaneck, New Jersey.  Tr. 52, 56.  In November 1992, Plaintiff's mother died and plaintiff became the executor of her estate.  Tr. 22.  Thereafter, Plaintiff accumulated large debts and was forced to sell his mother's home.  Tr. 15.  As a result of the sale, on May 19, 1999 Plaintiff received $21,915.72, which was placed in an escrow account held by the buyer's attorney, Louis A. Cappazzi, Jr. pending payment of tax liens and other claims against Plaintiff and the real estate Tr. 21.

On July 30, 1999 Plaintiff's psychiatrist, Dr. Peter Martindale certified to the New Jersey Supreme Court that although Plaintiff was not incompetent, he recommended that a trustee be

2

appointed to manage his financial affairs.  Plaintiff prepared a similar certification setting forth

his need for assistance and requesting the court to authorize the establishment of a special needs

trust ("SNT") on his behalf.  Under the statute governing SSI benefits, 42 U.S.C. §

1396p(d)(4)(A), a trust can be established for an SSI recipient with funds from sources other than

the beneficiary without impairing the beneficiary's eligibility for SSI, Medicaid, and other

entitlements and benefits to which he or she has a right as a result of disability.

Responding to Plaintiff's petition on December 10, 1999, Judge Marguerite Simon of the

New Jersey Superior Court, Chancery Division Probate Part, appointed Donald Keifer and

Beverly Keifer co-conservators of Plaintiff's estate and instructed that a "Special Needs Pay

Back Trust" be established for Plaintiff.  Tr. 30-31.  A trust agreement between Judge Simon and

Donald Keifer dated December 10, 1999, contained the following provision concerning the

purpose of the trust:

> The purpose of this trust is to provide financial assistance to
>
> RICHARD KELLER...without jeopardizing his eligibility for
>
> Supplemental Security Income (SSI) and Medical Assistance
>
> (Medicaid) or any other publicly funded programs which he
>
> requires or may require in the future because of his disability.  This
>
> trust is intended to supplement, not replace, services provided by
>
> Medicaid.

Tr. 33.  It was obviously intended that the trust be funded with the balance of the $21,915.92

which had been placed in escrow on the previous May 19,1999 after payment of taxes and other

debts.

3

In May 1999 the SSA had notified Plaintiff that his SSI benefits had been terminated because he had liquid resources received in excess of the allowable limits.  Needing funds to provide for payment of rent and living expenses, Plaintiff drew down on the escrowed funds. The purchaser of his mother's real estate authorized his attorney, Louis A. Capozzi, Jr., Esq., to release money for this purpose provided there remained sufficient funds in escrow to cover the taxes and debts.  Accordingly, to cover Plaintiff's living expenses following sums were paid by check to Plaintiff on the following dates:

| | |
|---|---|
| May 19, 1999 | $2,500 |
| July 22, 1999 | $2,000 |
| December 23, 1999 | $1,000 |
| January 31, 2000 | $2,000 |
| March 17, 2000 | $2,000 |
| April 21, 2000 | $2,000 |
| June 2, 2000 | $2,000 |
| June 2, 2000 | $7,915.72 |

Apparently all taxes and other debts had been paid by June 2, 2000 and the $2,000 and $7,915.72 checks payable to Plaintiff represented the balance of there escrowed funds.  Plaintiff used the $2,000 for living expenses and funded the SNT with the remaining $7,915.72.  On August 11, 2000 SSA recognized the SNT, and SSI payments resumed.  It is Plaintiff's contention that the trust should have been recognized as existing from September 11, 1999, the date of the filing of the pleadings in the Superior Court seeking creation of the trust and that Plaintiff should have reserved SSI benefits and should not have been required to draw upon the escrowed funds to support himself during the period when the SSA withheld benefits.  In his proceeding before the SSA he sought reimbursement of the payments wrongfully withheld.

*The ALJ's Decision*

The ALJ's opinion described the sequence of events leading up to the sale of the house (an excludable resource) and Plaintiff's receipt of the proceeds of $21,915.72 (a non-excludable resource), which led the SSA's May 1999 determination of benefits as of September 1, 1999.  An individual on SSI is allowed only $2,000 in liquid resources.

The ALJ also noted that the proceeds were deposited in an escrow account to which Plaintiff did not have direct access.  He described the decision of SSA's District Office to the effect that because Plaintiff did not have access to the escrow account it was an excludable resource.  The issue before the ALJ was whether the District Office correctly ruled that Plaintiff was not entitled to SSI benefits for the months of May, July, and December 1999 and for the moths of January, March, April, and June 2000.

The ALJ rejected Plaintiff's contention that the establishment of the SNT should revert back to the date pleadings were filed in court to initiate the trust creation proceeding.  He held that Plaintiff received income well in excess of the SSI limitations in the months in issue, rejecting Plaintiff's argument that since the government failed to send him money, he had to use his own and therefore he should retroactively be considered to have been in financial need.  The ALJ's formal findings were:

> 1. The disbursements from the escrow fund were income to the claimant in the months received.
>
> 2. The claimant was over the resource limitation in June 1999.
>
> 3. The claimant was ineligible to receive SSI in seven months (May 1999, July 1999, December 1999, January 2000, March 2000, and April 2000) because of excess income and in one month (June 1999) because of excess resources.

5

4. The claimant has been paid all benefits due him.

Tr. 14.

## DISCUSSION

### A. Standard of Review

This appeal presents a question of law as to whether Appellant's escrow fund, SNT, and related disbursements constitute income or resources. Thus, the court will apply a de novo standard of review to the agency's conclusions of law. *Getahun v. Office of Chief Administrative Hearing Officer*, 124 F.3d 591, 594 (3rd Cir. 1997). As to the facts, a district court must accept the ALJ's findings as conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The facts in this case are undisputed and therefore there is no need to discuss the substantial evidence rule. The only questions concern the ALJ's application of the statute and regulations to the undisputed facts.

_____

### B. Summary of Conclusion

The ALJ correctly determined that the disbursements from the escrow fund were unearned income to Plaintiff in the months received, which under manual circumstances would make him ineligible for SSI benefits in those months. If the District Office were correct that the escrow fund, like the SNT, was an excludable resource, the SSA was in error when it concluded that Plaintiff was not entitled to SSI benefits after the creation of the escrow fund, and, in effect, Plaintiff had to draw upon this excludable resource to compensate for SSA's error in refusing him benefits.

6

However, the nature of this particular escrow fund was such that it did not qualify as an excludable resource.  Plaintiff was able to draw upon it freely to cover his living expenses (provided enough was left to pay certain taxes and debts), and he was able to specify the exact amounts of the payments- $2,500 in one case, $1,000 in another and $2,000 in the rest in an effort not to exceed the $2,000 resource limit.  Apparently, very little of the original $21,915.72 was needed for taxes and debts, because the monthly payments and the final payment of $9,915.72 paid to Plaintiff amounted to $21,415.72.

Given the nature of the escrow and its availability to Plaintiff for his living expenses it did not constitute an excludable resource.  Since at all times it exceeded $2,000, Plaintiff was not entitled to SSI payments for any of the months prior to the funding of the SNT.  There was no inequity in the ALJ's failure to require reimbursement to Plaintiff of the SSI payments for the months of May, June, and December 1999 and January, March, and April 2000.  In addition to recovering excess income in those months, he was possessed of excess resources.

## C. Applicable Statute and Regulations

An individual is eligible for SSI benefits if he or she is "an aged, blind, or disabled person" who "has limited income and resources."  20 C.F.R. § 416.1100.  "Financial eligibility for supplemental security income benefits is based upon certain prescribed limits, and...if an individual's available resources or monthly income exceed those limits, he or she is not eligible for SSI benefits."  *Quinchett v. Massanari*, 185 F. Supp.2d 845, 850 (S.D. Ohio 2001).  For the months beginning January 1, 1989, the resource limit for SSI eligibility is $2,000.  42 U.S.C. §

1382(a)(3)(B).  Income limits are indirectly determined by reducing the SSI benefit rate by the amount of countable income an individual has for that particular month.  20 C.F.R. § 416.420. The monthly benefit rate for a single individual in 1999 was $500 and in 2000 the rate was $512.

Income consists of both earned income and unearned income.  42 U.S.C. § 1382 (a). Earned income includes wages, net earnings from self-employment, remuneration received for services performed in a sheltered workshop or work activities center, and royalties earned by an individual in connection with any publication of the work of the individual.  *Id*.  Unearned income means all other income including: support and maintenance furnished in cash or kind; payments received as an annuity, pension, retirement, or disability benefit; prizes and awards; support and alimony payments; and any earnings of, and additions to, the corpus of a trust established by an individual, of which the individual is a beneficiary.  *Id*.  Additionally, payments to the individual occasioned by the death of another person constitute unearned income.  *Id*.

The United States Code does not specifically define "resources"; instead, 42 U.S.C. § 1382b provides a list of items excluded from resources.  The exclusions include: an individual's home; household goods; other property essential to the means of self-support; and resources for a disabled individual who has a plan for achieving self-support approved by the Commissioner of Social Security.  42 U.S.C. § 1382b.  However, the Code of Federal Regulations defines resources as "cash or liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his or her support or maintenance."  20 C.F.R. § 416.1201. Furthermore, "if the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource."  *Id*.  Plaintiff's ability to direct payments from the escrow fund constituted such right, authority, and power.

8

Section 1396p(d) of Title 42 of the United States Code specifies that "a trust containing the assets of an individual under age 65 who is disabled and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court" is not included when determining an individual's eligibility for benefits.  A trust is defined as "any arrangement in which a grantor transfers property to a trustee or trustees with the intention that it be held, managed, or administered by the trustee(s) for the benefit of the grantor or certain designated individuals (beneficiaries)." *Dept. of Health and Human Services Manual, Part 3 "Eligibility"* at 3-3109.24 Rev. 64 Sec. 3259.1.   "The term 'trust' also includes any legal instrument or device that is similar to a trust," such as an escrow account. *Id*.

Additionally, the SSA Programs Operations Manual System ("POMS"), SI 01120.200(D)(2), noted that a trust principal is not a resource for SSI purposes if a beneficiary lacks legal authority to revoke the trust or direct the use of its assets to his own support.[1]  "If the trust principal is not a resource, disbursements from the trust may be income to the SSI recipient beneficiary, depending on the nature of the disbursements. Regular rules to determine when income is available apply."  SI 01120.200(E)(1).  Furthermore, when the trust principal is not a

---

[1] Although policy statements, such as POMS, lack the force of the law, interpretations within policy statements "are 'entitled to respect,' but only to the extent that they are persuasive. *Christensen v. Harris County*, 529 U.S. 576, 577 (2000) (quoting *Skidmore v. Swift and Co.*, 323 U.S. 134, 140 (1944)); *see also Hartfield v. Barnhart,* 384 F.3d 986, 988 (8th Cir. 2004) (noting that "while [POMS] do not have legal force and do not bind the Commissioner, courts should consider them in their findings).

resource, "cash paid directly from the trust to the individual is unearned income ."  SI

01120.200(E)(1)(a); *see also Simmons v. Chater*, 104 F.3d 168, 169 (8th Cir. 1997)(stating that

the plaintiff's disbursements from his trust were income because "the regulations are quite clear

that the SSA will consider all cash or other incoming resources that can be used to pay for food,

clothing, and shelter as income" when determining SSI eligibility).  Also, the *Dept. of Health and*

*Human Services Manual, Part 3 "Eligibility"* at 3-3109.31 Rev. 64 Sec. 3259.7(B) noted that

payments from income or the corpus of an irrevocable trust made to or for the benefit of the

individual are treated as income to the individual.

"Resources determinations are made as of the first moment of the month. A resource

determination is based on what assets an individual has, what their values are, and whether or not

they are excluded as of the first moment of the month."  20 C.F.R. § 416.1207.  "Items received

in cash or in kind during a month are evaluated first under the income counting rules and, if

retained until the first moment of the following month, are subject to the rules for counting

resources at that time."  *Id.*

In *Hecht v. Barnhart*, 217 F. Supp.2d 356, 363 (E.D.N.Y. 2002), the plaintiff contended

that the SSA erred when it determined that the plaintiff's disbursements from his SNT

constituted income and reduced plaintiff's benefits accordingly.  The court held that the SSA

"may calculate disbursements from an SNT as unearned income without conflicting with the

state law establishing the SNT."  *Id.*

In the present case, plaintiff asserts that the "lump sum earmarked for the Trust should be

considered a resource and not income."  Pl.'s Br. at 4.  As stated in the *Dept. of Health and*

*Human Services Manual*, the funds in an escrow account constitute a trust; therefore, Plaintiff's

funds earmarked in his escrow account for the SNT should be treated as a trust.  Because the assets of the escrow account were subject to Plaintiff's direction in order to provide for his living expenses, the funds were a resource and should have been included when determining SSI eligibility.

Even if the escrow account were considered a non-resource trust, POMS SI 01120.200(E)(1) establishes that disbursements from a non-resource trust may be income.  More specifically, POMS SI 01120.200(E)(1) states that: "when the trust principal is not a resource, cash paid directly from the trust to the individual is unearned income."  In the present case, Plaintiff received cash directly from the trust principal and even if it were not a resource, the cash should be considered income when calculating his eligibility.  The present case is similar to *Simmons v. Chater*, 104 F.3d at 169, because both Plaintiff and the *Simmons* plaintiff admitted that they used disbursements from their respective trusts for "food and shelter."  Pl.'s Br. at 15.  As the *Simmons* Court articulated, the plaintiff's trust disbursements were income because the SSI considers cash and other resources used to pay for food, clothing, and shelter when determining SSI eligibility.  *Simmons*, 104 F.3d at 169.

Assuming *arguendo* that the creation of the SNT "should date back to the time of filing of the Order to Show Cause," Pl.'s Br. at 11, the disbursements received by the Plaintiff would still constitute income.  First, Plaintiff's SNT was an irrevocable trust.  Thus, according to *Dept. of Health and Human Services Manual, Part 3 "Eligibility"* at 3-3109.31 Rev. 64 Sec. 3259.7(B), payments from income or the corpus of an irrevocable trust made to or for the benefit of the individual are treated as income to the individual.

Second, the facts of this case mirror the facts of *Hecht v. Barnhart*, 217 F. Supp.2d at

11

363.  Like Hecht, Plaintiff claimed that the disbursements from his SNT did not constitute income.  *Id*.  The *Hecht* Court acknowledged that the SSA may calculate SNT disbursements as unearned income.  *Id*.  Thus, the SSA may appropriately consider Plaintiff's disbursements as unearned income even if the SNT creation date reverts back to September 11, 1999.

Third, Plaintiff's pending lawsuit for damages related to the sale of his mother's home prevented the release of the escrowed funds until June 2000.  Thus, the SNT did not exist at the time of the May 1999 and July 1999 disbursements.  Also, the SNT was not the source of Plaintiff's disbursements in December 1999, January 2000, April 2000, May 2000, and June 2000; instead, the disbursements received by Plaintiff during those months came from the escrow account.  Therefore, those disbursements were unearned income.

For the aforementioned reasons, the ALJ did not err in determining Keller's SSI benefit eligibility.

*D. Equal Protection Claim*

The court has reviewed Plaintiff's Equal Protection claim and finds it to be totally without merit.

### CONCLUSION

For the reasons stated herein, the decision of the ALJ is affirmed.

     /s/  Dickinson R. Debevoise
     DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 22, 2005